IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CHESTER DEES, MARCUS HUBBARD,
WANDA JUNE KIRKPATRICK, and
JIMMY SANTANA

    Plaintiffs,

v.

                                                      No. 1:24-cv-00873-MIS-KK

FEVID TRANSPORT, LLC, and
SAND REVOLUTION II, LLC

    Defendants.

### ORDER DENYING MOTION TO TRANSFER VENUE

THIS MATTER is before the Court on the Opposed Motion to Transfer Venue filed by Defendants Fevid Transport, LLC, and Sand Revolution II, LLC, on January 31, 2025 ("Motion"). ECF No. 24. Plaintiffs responded on February 14, 2025, ECF No. 25 ("Response"), and Defendants replied in support of their Motion on February 28, 2025, ECF No. 26 ("Reply"). The Motion is thus ripe for consideration and the Court will DENY Defendants' request for transfer.

### I.    RELEVANT BACKGROUND

Plaintiffs bring this putative class and collective action for damages pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA"), and the New Mexico Minimum Wage Act, N.M. Stat. Ann. § 50-4-20, *et seq*. ("NMMWA"), asserting Defendants improperly classified them and others similarly situated as exempt employees and thereby failed to pay them overtime wages for work done in excess of "forty (40) hours in each workweek." Compl. at 1-3, 6, ¶¶ 1, 4-7, 9-10, 35, ECF No. 1. Defendants "are jointly owned and controlled entities which provide frac sand logistics services to drillers in the Permian Basin under the name Sand Revolution." Aff. of Vanessa Villasana (hereinafter, "Villasana Aff.") at 1, ¶ 1, ECF No. 24-5. Plaintiffs are "former

truck drivers for Defendants" who allege that they, at the direction of Defendants, regularly hauled deliveries into New Mexico over the last three years and were not compensated for hours worked more than forty hours per week. Compl. at 1-2, 5, ¶¶ 1, 3-4, 28, ECF No. 1; Am. Answer at 1, ¶ 3, ECF No. 33; Mot. at 1, ECF No. 24. Each named Plaintiff signed identical documents titled "Mutual Agreement to Arbitrate Claims," *see* ECF Nos. 24-1, 24-2, 24-3, and 24-4 (collectively, the "Agreements"), as part of their employment onboarding with Defendant Fevid Transport, LLC,[1] Villasana Aff. at 1-2, ¶¶ 5, 7, 9, ECF No. 24-5. The Agreements contain a forum-selection clause that provides: "The venue of any Dispute and all matters relating, concerning, or affecting the arbitration, including, without limitation, such proceedings as identified or described in Article 8, shall be in Odessa, Texas." *E.g.*, ECF No. 24-1 at 7, ¶ 11.1.

In their Motion, Defendants set forth two grounds for the transfer of this case to the Western District of Texas, Odessa-Midland Division, citing 28 U.S.C. §§ 1404(a) and 1406(a). ECF No. 24 at 1. With respect to Section 1406(a), Defendants contend that the Agreements signed by Plaintiffs contain mandatory forum-selection clauses "that provides for venue of this matter to be exclusively in Odessa, Texas." *Id.* at 1, 3-8. Plaintiffs dispute the existence of an applicable mandatory forum-selection clause because the plain language of the Agreements provides that it applies only in the context of arbitration, which Defendants do not seek to compel here. Resp. at 1, 3-6, ECF No. 25.

In the alternative, Defendants assert that a transfer of this matter pursuant to § 1404(a)

---

[1] Plaintiffs were admittedly employed by Defendant Fevid Transport, LLC. Am. Answer at 1, ¶ 3, ECF No. 33. Defendants Fevid Transport, LLC and Sand Revolution II, LLC are jointly owned and controlled entities. Villasana Aff. at 1, ¶ 1, ECF No. 24-5. Although Defendant Sand Revolution II, LLC, a nonsignatory to the Agreements at issue, has not explicitly asserted that it is entitled to the benefits of the Agreements, Defendants have moved in tandem to transfer this case to another district court and will, only for the limited purposes of this Order and without the Court finding as such, be considered Plaintiffs' joint employer for purposes of assessing whether the Agreements apply to this suit. *See GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 590 U.S. 432, 438 (2020) ("[T]he [Federal Arbitration Act] permits a nonsignatory to rely on state-law equitable estoppel doctrines to enforce an arbitration agreement." (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631-32 (2009)).

2

promotes the interest of justice as it would be more convenient for the parties and any witnesses to have the matter heard in the Western District of Texas, Odessa-Midland. Mot. at 1, 8-12, ECF No. 24. Plaintiffs claim that, even if there is a mandatory forum-selection clause in the Agreements, the analysis for transfer pursuant to § 1404(a) favors this case staying in the District of New Mexico. Resp. at 1-2, 6-10, ECF No. 25. The Court takes each of Defendants' arguments in turn.

## II.   LEGAL STANDARD

Title 28, United States Code, "Section 1406(a) provides that the district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 55, (2013) (alterations and quotation marks omitted). A forum-selection clause may not be enforced through a motion to dismiss under § 1406(a). *Id.* at 52. The dismissal or transfer of an action pursuant to § 1406(a) is necessary when venue is "wrong or improper." *Id.* at 55-56 (quotation marks omitted). Whether venue is improper is governed generally by 28 U.S.C. § 1391, which states that "except as otherwise provided by law, this section shall govern the venue of all civil actions brought in district courts of the United States." *Id.* at 55 (alterations and quotation marks omitted).

A civil action may be brought in a judicial district in which "any defendant resides, if all defendants are residents of the State in which the district is located . . . " or where "a substantial part of the events or omissions giving rise to the claim occurred . . . ." *Id.* at 55-56 (quoting 28 U.S.C. § 1391(b)). "Whether the parties entered into a contract containing a forum-selection clause has no bearing on whether a case falls into one of the categories of cases listed in § 1391(b). As a result, a case filed in a district that falls within § 1391 may not be dismissed [or transferred] under § 1406(a) . . . ." *Id.* at 56 (noting where venue is improper, "the case must be dismissed or

3

transferred under § 1406(a)"). "Although a forum-selection clause does not render venue in a court 'wrong' or 'improper' within the meaning of § 1406(a), . . . the clause may be enforced through a motion to transfer under § 1404(a)." *Id.* at 59.

A motion seeking to enforce a forum-selection clause for transfer pursuant to § 1404(a)—which provides that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented"—will typically be granted absent "extraordinary circumstances unrelated to the convenience of the parties [that] clearly disfavor a transfer." *Id.* at 52, 62. Section 1404(a) codified the doctrine of *forum non conveniens* "for the subset of cases in which the transferee forum is within the federal court system[.]" *Id.* at 60 ("Congress has replaced the traditional remedy of outright dismissal with transfer."). Courts evaluate forum-selection clauses pointing to a nonfederal forum in the same way that they evaluate those that point to a federal forum, by the balancing of interest standards dictated by the doctrine of *forum non conveniens*. *Id.* at 61 ("And because both § 1404(a) and the *forum non conveniens* doctrine from which it derives entail the same balancing-of-interests standard, courts should evaluate a forum-selection clause pointing to a nonfederal forum in the same way that they evaluate a forum-selection clause pointing to a federal forum.").

Section 1404(a) affords courts broad discretion to adjudicate motions to transfer based on a case-by-case review of convenience and fairness. *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991); *Atl. Marine Constr. Co., Inc.*, 571 U.S. at 62-63 ("Ordinarily, the district court would weigh the relevant factors and decide whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'" (citation omitted)); *see also Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153,

4

1167 (10th Cir. 2010) (reviewing for abuse of discretion district court's denial of § 1404(a) motion for transfer). Where a motion for transfer under § 1404(a) is not based on a valid forum-selection clause, the movant "bears the burden of establishing that the existing forum is inconvenient." *Chrysler Credit Corp.*, 928 F.2d at 1515. Whether a valid forum-selection clause applies informs the extent of the § 1404(a) analysis undertaken by the court. *Atl. Marine Constr. Co., Inc.*, 571 U.S. at 62-65 (explaining that in a case that does not involve a forum-selection clause a district court evaluates the various public interest factors and the convenience of the parties but where there is a valid forum-selection clause, the balance by the court is altered). In applying the provisions of Section 1404(a), the first determination to be made is whether the judicial district to which transfer is desired would have been an appropriate district for the claim to have been filed. *See Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960) ("[T]he power of a District Court under § 1404(a) to transfer an action to another district is made to depend . . . upon whether the transferee district was one in which the action 'might have been brought' by the plaintiff." (quoting § 1404(a))); *see also In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (finding the transferee court "would have been a place where the claims could have been originally filed" because jurisdiction and venue "would have been supportable"); *Price v. Takata Corp.*, Civ. No. 07-760 JH/WPL, 2008 WL 11319690, at *2 (D.N.M. Aug. 14, 2008) (concluding the plaintiff's action "might have been brought" in the transferee court as "the site of the underlying accident is an appropriate venue in products liability cases").

"In the typical case not involving a forum-selection clause, a district court considering a § 1404(a) motion . . . must evaluate both the convenience of the parties and various public-interest considerations." *Atl. Marine Constr. Co., Inc.*, 571 U.S. at 62. These factors include:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of

5

> witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Emps. Mut. Cas. Co.*, 618 F.3d at 1167 (alteration and citation omitted); *see Atl. Marine Cons. Co., Inc.*, 571 U.S. at 62 n.6 (listing the private factors—those that bear on the convenience of the parties—and the public-interest considerations to be considered by the district court). When a valid forum-selection clause representing "the parties' agreement as to the most proper forum" is present, the district court's "calculus changes" in three ways: (1) the choice of forum by plaintiff holds no weight; (2) private-interest factors "weigh entirely in favor of the preselected forum" and only public-interest factors are considered by the court; and (3) "a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules." *Atl. Marine Cons. Co., Inc.*, 571 U.S. at 63-65 (quotation marks and citation omitted). "The district court's weighing is entitled to substantial deference when it has considered and reasonably balanced all relevant interest factors." *Kelvion, Inc. v. PetroChina Canada Ltd.*, 918 F.3d 1088, 1094 (10th Cir. 2019)

### III.   DISCUSSION

#### A.   Venue is Proper in this District Precluding Transfer Pursuant to § 1406(a).

Plaintiffs have asserted in their Complaint that venue in this district is proper under 28 U.S.C. § 1391(b) "because a substantial part of the events giving rise to the claim occurred in this District." ECF No. 1 at 4, ¶ 16. Although Defendants' principal places of business are in Midland, Texas, Defendants do and have operated their businesses in New Mexico. Am. Answer at 2-3, ¶¶ 11-12, 17, ECF No. 33; Villasana Aff. at 2, ¶ 11, ECF No. 24-5. Pursuant to the venue statute, "A civil action may be brought in . . . (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ." 28 U.S.C. § 1391(b)(2). The Tenth Circuit has

6

clarified that venue based on § 1391(b)(2) "is not limited to the district with the *most* substantial events or omissions." *Emps. Mut. Cas. Co.*, 618 F.3d at 1165; *see also id.* at 1166 ("[V]enue can be appropriate in more than one district[.]" (quotation marks and citation omitted)). The court must consider "the nature of the plaintiff's claims and the acts or omissions underlying those claims" and whether "substantial 'events material to those claims occurred' in the forum district." *Id.* (quoting *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005)).

Plaintiffs allege they were deprived of overtime pay when they worked in New Mexico at the direction of Defendants. Compl. at 1-2, 5-6, ¶¶ 4, 7-8, 28, 36, ECF No. 1. Defendants do not sufficiently challenge the propriety of venue sitting in this District in their Motion, *see generally* ECF No. 25, and because a forum-selection clause cannot be enforced through a § 1406(a) motion, *see Atl. Marine Const. Co., Inc.*, 571 U.S. at 55, a transfer of this matter to another district court cannot occur when "the case falls within one of the three categories set out in § 1391(b)," *see id.* at 56. Because this case falls within Section 1391(b)(2), venue is proper in this District and a transfer of this matter under Section 1406(a) is denied.

      **B.**      **There is No Valid Forum-Selection Clause Applicable to this Case.**

The Court finds that under the plain language of the Agreements, lawsuits of this type are explicitly excepted from the Agreements' definition of "Dispute," and therefore the forum-selection clause Defendants seek to enforce is not applicable to this case. *Cf. Enriquez v. Seaton, LLC*, No. 13-1474-RDR, 2014 WL 791161, at *2 (D. Kan. Feb. 27, 2014) (rejecting argument that the forum-selection clause at issue excluded tortious retaliation claims because the plain language of the provision, stating "All suits arising from this employment agreement and the performance hereunder," was not limited to only contract claims (alterations and quotation marks omitted)). "The scope of a forum-selection clause is evaluated according to ordinary principles of contractual interpretation." *Kelvion, Inc.*, 918 F.3d at 1092. Courts consider "the plain language of the relevant

7

provisions" of an arbitration agreement to give "meaning and significance to each word or phrase within the context of the entire contract," which is viewed "as objective evidence of the parties' mutual expression of assent." *THI of N.M. at Vida Encantada, LLC v. Lovato*, 864 F.3d 1080, 1086 (10th Cir. 2017) (alterations, quotation marks, and citation omitted).

The language in the Agreements unambiguously refutes Defendants' asserted belief that this matter is a "Dispute" subject to the forum-selection clause. Mot. at 7-8, ECF No. 24; Reply at 2-4, ECF No. 26. The Agreements' forum-selection clause applies to "any Dispute and all matters relating, concerning, or affecting the arbitration, including, without limitation, such proceedings as identified or described in Article 8[.]" ECF Nos. 24-1, 24-2, 24-3, 24-4 at 7, ¶ 11.1. Article I, section 5 in the Agreements establishes the definition of "Dispute" subject to arbitration. *E.g.*, ECF No. 24-1 at 1, ¶ 1.5. The definition provides specific exceptions[2] as to the type of matters not encompassed in the definition of "Dispute":

> Notwithstanding anything contained to the contrary in **Section 1.5 above**, it is expressly and specifically understood that the term "Dispute" does not include . . . (d) class, mass, or collective actions or class arbitrations involving more than one Applicant/Employee, consolidated action, or in a representative capacity on behalf of any other person, unless agreed to in writing by all parties.

(emphasis original). ECF No. 24-1 at 1, ¶ 1.5; ECF No. 24-2 at 1, ¶ 1.5; ECF No. 24-3 at 1, ¶ 1.5; ECF No. 24-4 at 1, ¶ 1.5.

Here, Plaintiffs, each an "Employee" as defined under the Agreements, filed their "Class Action Complaint" on August 30, 2024, praying for certification of their claims as a Class Action and, for purposes of their FLSA claim, as a collective action. Compl. at 3, 12-13, ¶¶ 13, 68(a), 68(f), ECF No. 1; *see also* ECF No. 24-1 at 1, ¶ 1.3; ECF No. 24-2 at 1, ¶ 1.3; ECF No. 24-3 at 1, ¶ 1.3; ECF No. 24-4 at 1, ¶ 1.3. Consequently, this action is explicitly excepted from the definition

---

[2] Defendants' Motion and Reply, and Plaintiffs' Response, did not address, or even flag to the Court, the excepted portions from the definition of "Dispute" in the Agreements. *See generally* ECF Nos. 24, 25, 26.

of "Dispute" in the Agreements and the forum-selection clause is therefore not applicable to this case.³ *See Azima v. RAK Inv. Auth.*, 926 F.3d 870, 874 (D.C. Cir. 2019) ("A [forum-selection] clause is applicable if its scope encompasses the dispute, which we assess using normal principles of contract interpretation."); *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010) ("[A] party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so.").

For the reasons so stated, there is not a mandatory forum-selection clause for this Court to consider in its Section 1404(a) analysis and the burden remains with Defendants to establish that § 1404(a) transfer to the Western District of Texas, Midland-Odessa is warranted. *See Chrysler Credit Corp.*, 928 F.2d at 1515 ("The party moving to transfer a case pursuant to § 1404(a) bears the burden of establishing that the existing forum is inconvenient.").

### C.   The Section 1404(a) Analysis Favors No Transfer.

In light of the Court's determination that there is no enforceable forum-selection provision applicable to this matter, the survey undertaken pursuant to a Section 1404(a) transfer analysis will

---

³   This conclusion is supported by other provisions in the Agreements. *See THI of N.M. at Vida Encantada, LLC*, 864 F.3d at 1086. The relevant forum-selection clause refers to venue "in Odessa, Texas" for "any Dispute" and further encompasses "all matters relating, concerning, or affecting the arbitration, including, without limitation, such proceedings as identified or described in Article 8 . . ." of the Agreements. *See, e.g.*, ECF No. 24-1 at 7, ¶ 11.1. Article 8 of the Agreements contemplates the role of the arbitrator and sets forth the manner in which the arbitration is to be accomplished, and does not speak to, still less impact the effect of, the excised "class, mass, or collective actions . . . involving more than one Applicant/Employee" to render the forum-selection clause applicable to this case by the plain terms of the Agreements. *See, e.g.*, *id.* at 1, 5-7, ¶¶ 1.3, 1.5, 8.1-8.9, 11.1. Article 19 of the Agreements demonstrates that their purpose and intent was for the arbitration of "differences" that might arise between the employer and an individual employee. *See, e.g.*, *id.* at 9, ¶ 19.1 ("The promises of EMPLOYER and Applicant/Employee to arbitrate differences, rather than litigate them before courts or other bodies, provide adequate consideration for each other."). Finally, Article 2, section 4 of the Agreements reinforces this understanding. *See, e.g.*, at 2, ¶ 2.4 ("**THE APPLICANT/EMPLOYEE AND EMPLOYER MUTUALLY, IRREVOCABLY, UNCONDITIONALLY, AND EXPRESSLY WAIVE ANY RIGHT TO RESOLVE ANY DISPUTE THROUGH ANY OTHER MEANS, INCLUDING ANY STATE OR FEDERAL JUDICIAL OR ADMINISTRATIVE FORUM, SUCH AS FILING A LAWSUIT IN COURT FOR TRIAL BY THE COURT, BEFORE A JURY OR OTHERWISE. THE PARTIES ARE PRECLUDED FROM BRINGING OR RAISING IN COURT OR BEFORE ANOTHER FORUM ANY DISPUTE WHICH COULD HAVE BEEN BROUGHT OR RAISED PURSUANT TO THIS AGREEMENT, UNLESS THE RIGHT TO PURSUE A STATUTORY CLAIM OR REMEDY IS EXPRESSLY PRESERVED OR CONTRAVENED BY LAW.**").

encompass all factors. *See Atl. Marine Constr. Co., Inc.*, 571 U.S. at 62-65 (noting the usual case employs an exhaustive assessment for transfer by contemplating the entirety of the private- and public-interest factors). Defendants assert that the balance of the relevant particulars favor transfer of this case to the Western District of Texas. Mot. at 8-12, ECF No. 24; Reply at 4-6, ECF No. 26. Plaintiffs, naturally, set forth an analysis that results in the contrary where this District retains this case. Resp. at 6-10, ECF No. 25. As detailed below, this Court agrees with Plaintiffs and denies Defendants' Motion.

### (1)    *This Action Could Have Been Brought in the Western District of Texas*

The ability to transfer a civil action from one district court to another district court is "limited by the final clause of § 1404(a) restricting transfer to those federal districts in which the action 'might have been brought.'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quoting § 1404(a)). Defendants contend the Western District of Texas would have been an appropriate venue for Plaintiffs' case to have been brought, Mot. at 12, ECF No. 24, and Plaintiffs' Response did not address, much less contest, this assertion, *see generally* ECF No. 25. The Court finds Plaintiffs could have brought suit in the Western District of Texas, Odessa-Midland, because Defendants are residents of Texas for purposes of the venue statute. Am. Answer at 2-3, ¶¶ 11-12, ECF No. 33; Villasana Aff. at 2, ¶ 11, ECF No. 24-5. *See* 28 U.S.C. §§ 1391(b)(1), (d). Consequently, the Court considers whether the discretionary factors weigh in favor of transfer based on the convenience of the parties and witnesses and in the interest of justice. *See Jimenez v. Packers Plus Energy Servs. (USA) Inc.*, No. CV 15-00802 WJ/KBM, 2016 WL 7670352, at *2 (D.N.M. Apr. 29, 2016) ("Once the Court concludes that a case might have been brought in the transferee court, the Court next evaluates certain discretionary factors to determine whether such factors weigh in favor of transfer based on the convenience of parties and witnesses.").

### **(2)** *Plaintiffs' Choice of Forum*

On the presumption that the forum-selection clause applies, Defendants argue that Plaintiffs' choice of forum should be given little weight in this case because (1) Plaintiffs have not alleged that they are residents of this judicial district, and (2) the "location of the loss" occurred in Texas and not New Mexico. Mot. at 10, ECF No. 24; Reply at 1-2, 4-5, ECF No. 26. Plaintiffs, meanwhile, contend that the location of their alleged "loss occurred wherever they worked in either Texas or New Mexico" and that because Defendants did "not challenge Plaintiffs' allegations that they performed work in New Mexico at Defendants' direction," their choice of this venue should not be disturbed. Resp. at 6-7, ECF No. 25. The Court finds the Plaintiffs' choice of forum weighs slightly against transfer.

"Unless the balance is strongly in favor of the movant, the plaintiff's choice of forum should rarely be disturbed." *Emps. Mut. Cas. Co.*, 618 F.3d at 1167 (alterations, quotation marks, and citation omitted). However, a plaintiff's choice of forum should be afforded less weight if the plaintiff does not reside in the district, and where the facts giving rise to the lawsuit have "no material relation or significant connection" to the forum. *Id.* at 1168 (quotation marks omitted).

Here, the extent of Plaintiffs' assertions as to their residences is captured in their Complaint wherein they assert this Court "has subject matter jurisdiction over the class action portion of this complaint . . . because . . . at least one New Mexico Class Member is from a different state than Defendants." ECF No. 1 at 4, ¶ 15. The affidavit provided in support of Defendants' Motion includes a statement that indicates that at the time each named Plaintiff completed their applications for employment with Defendant Fevid Transport, LLC, "none of the Plaintiffs listed a New Mexico residence." Villasana Aff. at 2, ¶ 12, ECF No. 24-5. Plaintiffs did not challenge this contention in their Response. *See generally* ECF No. 25. Thus, without knowing where Plaintiffs

11

reside, the weight of this factor turns on whether the "location of the loss" occurred in New Mexico or in Texas. *See Meador v. QES Wireline LLC*, Case No: 2:17-CV-00586-NF-KHR, 2018 WL 6164430, at *5 (D.N.M. June 26, 2018) (finding the choice of forum factor is neutral where the plaintiff failed to assert residence in district and stated that potential class members in his occupation "tend to change residences often"); *see also Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1981) ("Because the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference.").

While Plaintiffs claim their alleged loss of overtime pay stemmed from their excess hours worked "in New Mexico," Compl. at 5, ¶ 28, ECF No. 1, Plaintiffs have not countered in their Response Defendants' indications that Plaintiffs were employed by a Texas company and completed their applications for employment in Texas, Villasana Aff. at 2, ¶¶ 11-12, ECF No. 24-5. Defendants, however, recognize that their operations in New Mexico occur in Lea County and Eddy County, New Mexico, and that Plaintiffs "worked for Fevid within the States of Texas and New Mexico." Mot. at 1, ECF No. 24; Villasana Aff. at 2, ¶ 11, ECF No. 24-5. Yet Plaintiffs have not alleged the allocation of work performed in New Mexico versus in Texas or provided specifics on how often they performed in New Mexico. As such, without more from Plaintiffs, the Court finds this factor is reduced to weigh only slightly against transfer. *See Emps. Mut. Cas. Co.*, 618 F.3d at 1168 ("Courts . . . accord little weight to a plaintiff's choice of forum where the facts giving rise to the lawsuit have no material relation or significant connection to the plaintiff's chosen forum." (quotation marks and citation omitted)).

### (3)   *Accessibility of Witnesses and Sources of Proof*

"The convenience of witnesses is the most important factor in deciding a motion under § 1404(a)." *Emps. Mut. Cas. Co.*, 618 F.3d at 1169 (quotation marks and citation omitted). The §

1404(a) movant must demonstrate inconvenience by "(1) identify[ing] the witnesses and their locations; (2) indicat[ing] the quality or materiality of their testimony; and (3) show[ing] that any such witnesses were unwilling to come to trial[,] that deposition testimony would be unsatisfactory, or that the use of compulsory process would be necessary." *Id.* (alterations, quotation marks, and citation omitted).

In their Motion, Defendants claim that the majority of potential witnesses "will be much more likely to be located in Midland-Odessa, Texas" than in New Mexico. ECF No. 24 at 10. The affidavit provided in support of their Motion notes three individuals were initially disclosed as potential witnesses and represents that each "works in Midland, Texas." Villasana Aff. at 3, ¶ 13, ECF No. 24-5. Two of these three potential witnesses are identified only by last name with the third witness being the affiant herself, the Human Resources Manager for Defendants. *Id.* at 1, 3, ¶¶ 1, 13. Defendants do not, however, indicate the "quality or materiality of their testimony" nor do they represent that any of these witnesses would be unwilling to attend trial, that their deposition testimony would not be satisfactory, or that compulsory process would be required. *See Emps. Mut. Cas. Co.*, 618 F.3d at 1169 (holding the accessibility of witnesses weighs against transfer where the movant made general allegations as to the location of potential witnesses and did not identify "those witnesses with specificity" or indicate "the subject matter of their testimony"). Under essentially the same considerations, Defendants aver that they "will likely produce more documents" than Plaintiffs, including business records "and other tangible proof that will likely be collected through discovery," and that those documents and records are in Midland-Odessa. Mot. at 10, ECF No. 24. Defendants capitulate to Plaintiffs' assertion that documents have already been exchanged between the parties, seemingly without delay or imposition. Resp. at 8, ECF No. 25; Reply at 5, ECF No. 26. As such, Defendants have not established inconvenience, and the

accessibility of witnesses and sources of proof weighs against transfer. *See Scheidt v. Klein*, 956 F.2d 963, 966 (10th Cir. 1992) (affirming the district court's denial of defendant's § 1404(a) motion because defendant failed to demonstrate inconvenience of documents held at his Florida offices for trial in Oklahoma).

### (4)   *Cost of Making Necessary Proof*

Defendants emphasize the travel and corporate costs they will incur if the case remains in this District, while Plaintiffs emphasize Defendants' lack of evidence in support of their claim that they would bear a greater financial burden in litigating this matter here. Mot. at 10, ECF No. 24; Resp. at 8, ECF No. 25. The Court agrees with Plaintiffs that without evidence concerning the potential costs associated with litigation of this matter in this District, this factor weighs against transfer. *See Emps. Mut. Cas. Co.*, 618 F.3d at 1169 (rejecting assertion of increased costs unsupported by evidence); *see also Piper Aircraft Co.*, 454 U.S. at 258 ("[D]efendants must provide enough information to enable the District Court to balance the parties' interests.").

### (5)   *Docket Congestion*

Defendants argue that court congestion in the Western District of Texas is not "any more clogged or any less efficient than this Court," noting data indicating that as of March 31, 2024, "the median time interval from filing to disposition of civil cases in the Western District of Texas [i]s 7.4 months compared to 9.4 months in the District of New Mexico." Mot. at 11-12, ECF No. 24. Plaintiffs counter with statistics that indicate this District "had 183 civil actions per judgeship between September 30, 2023 and September 30, 2024, while the Western District of Texas had 341" and further assert that because this "District also only had 127 civil matters over three years old while the Western District of Texas had 387" this matter is "much more likely" to be "handled in an expedient fashion" in this District. Resp. at 9, ECF No. 25. Defendants maintain that cases

14

in the Western District of Texas, though "heavier" in number, "are resolved nearly two months faster on average." Reply at 6, ECF No. 26.

"When evaluating the administrative difficulties of court congestion, the most relevant statistics are the median time from filing to disposition, median time from filing to trial, pending cases per judge, and average weighted filings per judge." *Emps. Mut. Cas. Co.*, 618 F.3d at 1169. For the 12-month period ending December 31, 2024, the median time from filing to disposition was 7.9 months in this District versus 7.8 months in the Western District of Texas. *See* ADMIN. OFF. OF THE U.S. CTS., TABLE N/A—U.S. DISTRICT COURTS—COMBINED CIVIL AND CRIMINAL FEDERAL COURT MANAGEMENT STATISTICS at 37, 81 (Dec. 31, 2024). While there is no data capturing the median time from filing to trial for the District of New Mexico for the same period, in the Western District of Texas the median was 33.9 months. *Id.* The same data demonstrates that in this District, pending cases per judge was 401 with 374 weighted filings compared to the Western District of Texas where pending cases were 793 per judge with 756 weighted filings. *Id.* The Court finds that although there is variability in each case, this District's congestion speaks for itself, and these differences do not justify transferring this case. Here, the difficulties that may arise from congested dockets is not meaningful and there is no indication that this case would move more quickly in the Western District of Texas. The Court finds this factor to be neutral, neither weighing for nor against transfer. *See Navajo Health Found.—Sage Mem'l Hosp., Inc. v. Burwell*, 86 F. Supp. 3d 1211, 1251 (D.N.M. 2015) (comparing statistics on the relative congestion of courts in the District of New Mexico and the District of Arizona and finding that the comparable statistics render the factor neutral).

**(6)** *Localized Interest*

Defendants urge that this matter "should be adjudicated by the people of the Western District of Texas" because it has "a more meaningful connection to this suit[,]" due to the "strong relationship between Midland-Odessa and the Plaintiffs, Defendants, and the underlying employment relationship[s.]" Mot. at 11, ECF No. 24; Reply at 6, ECF No. 26. Plaintiffs did not respond to this contention. *See generally* ECF No. 25.

"When the merits of an action are unique to a particular locale, courts favor adjudication by a court sitting in that locale." *Emps. Mut. Cas. Co.*, 618 F.3d at 1170. In this action, the merits involve a dispute over alleged unpaid overtime wages for work done in New Mexico for which Plaintiffs bring claims under FLSA and the NMMWA. Compl. at 1-3, 5-6, ¶¶ 1, 3-7, 10, 28, 35, ECF No. 1. Defendants are Texas corporations based in the Midland area; as earlier noted, Plaintiffs have not stated their residences and have not disputed Defendants' representation that at the time each was initially employed by Defendant Fevid Transport, LLC, none provided New Mexico addresses. Am. Answer at 2-3, ¶¶ 11-12, 17, ECF No. 33; Villasana Aff. at 2, ¶¶ 11-12, ECF No. 24-5. *See In re Volkswagen AG*, 371 F.3d at 205-06 (considering the parties' residences being in the same "locale of the accident" and holding the district court abused its discretion denying the motion to transfer venue where the transferor court and the people of that community did not have a meaningful connection or relationship with the circumstances of the claims). Defendants operate in the Permian Basin, however, including "servicing clients with operations in Lea County and Eddy County, New Mexico." Villasana Aff. at 1-2, ¶¶ 1, 11, ECF No. 24-5. Thus, citizens of both New Mexico and Texas have substantial interests in adjudicating this case because the nature of Defendants' corporate operations straddle and span both states by its services in the Permian Basin. Defendants have therefore not established that the Western District of Texas has a

16

stronger interest in this litigation and the Court considers that this factor weighs against transfer. *See Jim v. CoreCivic of Tenn., LLC*, No. CIV 20-0618 JB/JFR, 2021 WL 4990084, at *24 (D.N.M. Oct. 27, 2021) (weighing against transfer where defendant does business in New Mexico).

### (7) *Familiarity of Forum Law*

Defendants stress that although the claims asserted involve the application of the NMMWA, "it is speculative to believe that a Western District of Texas court will be any less able to interpret New Mexico law." Reply at 6, ECF No. 26. Plaintiffs retort that the claims pled under NMMWA and FLSA do not require construction of any Texas law and this District being the more familiar with the NMMWA is best suited to hear this matter. Resp. at 9-10, ECF No. 25. It is true that this District likely has more experience with the NMMWA, *see State ex rel. Balderas v. Real Estate Law Ctr., P.C.*, 430 F. Supp. 3d 900, 942 (D.N.M. 2019) ("[T]he Court has a greater familiarity with New Mexico law and courts, and this experience will make it easier for the Court to decide New Mexico legal issues consistently with the state courts."), and although this factor is "less significant because federal judges are qualified to apply state law," *Emps. Mut. Cas. Co.*, 618 F.3d at 1169, the Court thus finds this factor weighs against transfer. *See Cisneros v. EP Wrap-It Insulation, LLC*, Civ. No. 19-500 GBW/GJF, 2019 WL 5268634, at *7 (D.N.M. Oct. 17, 2019) ("In the absence of any evidence to defeat the interest of New Mexico in having issues of New Mexico law decided within its borders, this factor clearly weighs in Plaintiffs' favor.").

## IV. CONCLUSION

Weighing all the relevant factors, on balance the Court finds transfer to be inappropriate. For the foregoing reasons, Defendants' Opposed Motion to Transfer Venue, ECF No. 24, is DENIED.

_____
**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE