IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CHESTER DEES,
MARCUS HUBBARD,
WANDA KIRKPATRICK,
and JIMMY SANTANA,

    Plaintiffs,

v.

                                              Case No. 1:24-cv-00873-MIS-KK

FEVID TRANSPORT, LLC,
and SAND REVOLUTION II, LLC,

    Defendants.

## ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR CONDITIONAL CLASS CERTIFICATION

THIS MATTER is before the Court on Plaintiffs Chester Dees, Marcus Hubbard, Wanda Kirkpatrick, and Jimmy Santana ("Plaintiffs")' Motion for Conditional Class [sic] Certification, ECF No. 34 ("Motion"), filed April 3, 2025. Defendants Fevid Transport, LLC and Sand Revolution II, LLC ("Defendants") filed a Response on April 24, 2025, ECF No. 39 ("Response"), to which Plaintiffs filed a Reply on May 8, 2025, ECF No. 44 ("Reply"). Upon review of the Parties' submissions, the record, and the relevant law, the Court will **GRANT IN PART** the Motion.

**I.    Background**

This is an action to recover unpaid overtime wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207, and the New Mexico Minimum Wage Act ("NMMWA"), N.M. Stat. Ann. § 50-4-22(D).[1] See Compl. ¶¶ 1, 4, 28-68, ECF No. 1.

---

[1] Although Plaintiffs seek unpaid overtime wages, see Compl. ¶¶ 1, 5-6, 60, 66, 68, the Complaint does not cite 29 U.S.C. § 207 or N.M. Stat. Ann. § 50-4-22(D), which are the overtime wage provisions of the FLSA and NMMWA, respectively. The Complaint cites 29 U.S.C. § 206, ECF No. 1 ¶ 61 which is the FLSA's minimum

Defendants formerly employed Plaintiffs as truck drivers to haul loads of sand in New Mexico. Id. ¶¶ 2-4; Mot. at 3, ECF No. 34. Plaintiffs and other truck drivers were typically scheduled for twelve- to fourteen-hour shifts on a "5-2-5-3" schedule—meaning they would work five days, have two days off, work five days, and then have three days off before the schedule repeats. Compl. ¶ 5, ECF No. 1. Defendants improperly classified Plaintiffs and other truck drivers as exempt from the overtime wage provisions of the FLSA and NMMWA, paid them the same rate of pay regardless of the number of hours that they worked in each workweek, and failed to compensate them at one and one-half times their regular hourly rate of pay for all hours worked in excess of forty hours. Id. ¶¶ 35, 44; see also id. ¶¶ 5-6, 8. Defendants also failed to pay Plaintiffs and other truck drivers for shop time, breakdown time, wait time, "deadhead trips between locations[,]" mandatory meetings, or any non-driving time. Id. ¶¶ 33, 37.

On August 30, 2024, Plaintiffs filed the instant lawsuit against Defendants as a class action under the NMMWA and as a class and collective action under the FLSA. See id. ¶¶ 1, 13, 40, 41. The Complaint proposes the following class definition for purposes of class certification under Federal Rule of Civil Procedure 23:

> All of Defendants' current and former truck drivers who hauled loads in New Mexico, worked over forty (40) hours in at least one week within the three (3) years preceding the filing of this lawsuit, and were not paid one and one-half times their regular rate of pay for all hours worked in excess of forty (40) hours.

Id. ¶¶ 9, 40. The Complaint does not indicate that Plaintiffs seek collective action certification under the same definition, and does not provide a separate definition for collective action certification under 29 U.S.C. § 216(b).

---

wage provision, and N.M. Stat. Ann. § 50-4-22(E), id. ¶ 60, which has not existed since the statute was amended in 2021, see Minimum Wage Act, Ch. 10, § 2, N.M. Stat. Ann. § 50-4-22 (2021).

On April 3, 2025, Plaintiffs filed the instant Motion for Conditional Class [sic] Certification pursuant to 29 U.S.C. § 216(b). ECF No. 34. Defendants filed a Response, ECF No. 39, to which Plaintiffs filed a Reply, ECF No. 44.

**II.     Legal Standard**

The FLSA requires employers to pay covered employees who work longer than forty hours in a given workweek "at a rate not less than one and one-half times the regular rate at which [the employee] is employed." 29 U.S.C. § 207(a)(1). As the Tenth Circuit has recognized, "[t]he purpose of FLSA overtime is 'to compensate those who labored in excess of the statutory maximum number of hours for the wear and tear of extra work and to spread employment through inducing employers to shorten hours because of the pressure of extra cost.'" Chavez v. City of Albuquerque, 630 F.3d 1300, 1304 (10th Cir. 2011) (quoting Bay Ridge Operating Co. v. Aaron, 334 U.S. 446, 460 (1948)).

Under the FLSA, an employee may bring a collective action on behalf of similarly situated employees as a remedy for violations of the FLSA. 29 U.S.C. § 216(b). The purpose of a collective action is to lower costs for individual plaintiffs but nonetheless "vindicate rights by the pooling of resources." Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 170 (1989). It also benefits the judicial system "by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged . . . activity." Id. Unlike Federal Rule of Civil Procedure 23 class actions, putative collective members under the FLSA must opt into the collective rather than opting out. Thiessen v. Gen. Elec. Cap. Corp., 267 F.3d 1095, 1102 (10th Cir. 2001); 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."). To obtain these consents, after the court finds that members of the proposed collective are sufficiently

3

similarly situated, parties may send notice of the opportunity to opt into the collective action. See, e.g., Deakin v. Magellan Health, Inc., 328 F.R.D. 427, 431 (D.N.M. 2018), decertified in part, 2024 WL 3829737.

Under the ad hoc approach endorsed—but not mandated—by the Tenth Circuit, "a court typically makes an initial 'notice stage' determination of whether plaintiffs are 'similarly situated.'" Thiessen, 267 F.3d at 1102 (citation omitted). A court's initial determination "decides whether a collective action should be certified for purposes of notifying potential class members." Bustillos v. Bd. of Cnty. Comm'rs of Hidalgo Cnty., 310 F.R.D. 631, 662-63 (D.N.M. 2015). At this initial stage, "the court does not decide the merits of the underlying claims or resolve factual disputes." Id. at 647.

While the plaintiff bears the burden of proving she is "similarly situated" to other potential collective members, the burden is "not great." Id. at 663. The plaintiff "'need only describe the potential class within reasonable limits and provide some factual basis from which the court can determine if similarly situated potential plaintiffs exist.'" Id. (quoting Schwed v. Gen. Elec. Co., 159 F.R.D. 373, 375-76 (N.D.N.Y. 1995)). At this stage, a court "'requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan.'" Thiessen, 267 F.3d at 1102 (alteration omitted) (quoting Bayles v. Am. Med. Response of Colo., Inc., 950 F. Supp. 1053, 1066 (D. Colo. 1996), modified on recon., 962 F. Supp. 1346 (D. Colo. 1997)). "The court must determine whether the named and potential plaintiffs are 'similarly situated' based on the allegations in the complaint, which may be supported by sworn statements." Deakin, 328 F.R.D. at 432; see also Landry v. Swire Oilfield Servs, L.L.C., 252 F. Supp. 3d 1079, 1114 (D.N.M. 2017) (stating that a plaintiff "need only describe the potential class within reasonable limits and provide some factual basis from which the court can determine

4

if similarly situated potential plaintiffs exist."). If the plaintiff carries her burden, the Court may conditionally certify a collective action and facilitate notice to the potential opt-in plaintiffs that this action is pending. See Hoffman-LaRoche, 493 U.S. at 172-73.

Then, after this notice and the close of discovery, a court moves to the second stage of its analysis, "using a stricter standard of 'similarly situated.'" Thiessen, 267 F.3d at 1102-03. The court may then reevaluate the conditional certification, usually prompted by a defendant's motion to decertify the collective.[2] Id. During the second stage of analysis, "a court reviews several factors, including (1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; (3) fairness and procedural considerations; and (4) whether plaintiffs made the filings required" before they commenced their lawsuit. Id. (internal quotation marks and citations omitted); see also Deakin, 328 F.R.D. at 432.

### III. Discussion

Plaintiffs move for conditional certification of an FLSA collective but do not clearly define the proposed collective. See generally Mot., ECF No. 34. Plaintiffs argue that they are similarly situated to each other and other drivers employed by Defendants. Id. at 6-7. Specifically, they argue that "[a]ll putative class members were former drivers for the Defendants, who were employed to haul sand throughout New Mexico and on a short haul basis." Id. at 7 (citing Compl. at 2, ECF No. 1). They argue that the proposed collective's job duties

> entailed the waiting in between scheduled load pick ups and drop offs, 'deadhead' travel between locations, traveling to and from locations where sand could not be loaded into their vehicles ('reject locations'), filling out and submitting the proper

---

[2] However, "at the final certification stage, the burden remains with the plaintiffs to establish that they are similarly situated." Spencer v. Mental Health Res., Inc., 757 F. Supp. 3d 1244, 1247 n.1 (D.N.M. 2024). Therefore, in the absence of a motion by Defendants to decertify a conditionally certified collective action, Plaintiffs' failure to move for final certification of a collective action will result in decertification. See id.

rejection location paperwork, and attending mandatory meetings before or after the shifts every day.

Id. (citing Compl. at 6, ECF No. 1). They argue that to complete these duties, members of the proposed collective "commonly worked 12 to 14-hour shifts, on a 5-2-5-3 work shift schedule, undoubtedly in excess of 40 hours." Id. (citing Compl. at 2, ECF No. 1; Decl. of Marcus Hubbard ("Hubbard Decl."), ECF No. 34-1). They argue that members of the proposed collective were all paid "partially fixed and partially variable rates based on the number of loads delivered." Id. (citing Compl. at 6, ECF No. 1; Pay Stubs, ECF Nos. 34-3, 34-4, 34-5). See also id. at 3 (stating that "Defendants' rate sheets for Fevid drivers confirms that drivers were paid on a graduated basis per loaded mile and were not paid hourly for hauling loads." (citing Fevid Driver Rate Sheet, ECF No. 34-2)). They further argue that all members of the proposed collective were victims of Defendants' failure to pay overtime rates for all hours in excess of forty hours each workweek. Id. at 8. The Motion's Prayer for Relief requests that the Court:

> (1) Conditionally certify this case as a collective action under 29 U.S.C. §216(b) with respect to Fevid Drivers performing driving services from 2021 to present, for Defendants;
>
> (2) Require Defendants, cooperatively or through a representative selected among them, provide Plaintiffs' counsel within ten (10) days of entry of an Order approving this Motion all contact information including, names, birth dates, driver's license numbers, all known telephone numbers, all known email addresses, all known addresses, and dates of employment for all of the Class Members;
>
> (3) Authorize mailing of the proposed Notice and Consent Form to class members via regular U.S. mail and email them within seven (7) days of Plaintiffs' counsel receiving the class list from Defendants, and allow Plaintiffs' counsel to hire a third party class administration company if they deem appropriate;
>
> (4) Allow Class members to execute their consent form electronically via DocuSign;
>
> (5) Approve the notice be sent to the putative class members twice, both via mail and electronically: the first time within seven days of receiving the list of putative

6

>class members from Defendants and a second time 30 days after, but only to those class members who have not yet submitted their Consent Forms.

Id. at 9.

In their Response, Defendants initially argue that "Plaintiffs' Motion fails to clearly identify the class of persons to which Plaintiffs believe notice of the FLSA collective action should be provided." ECF No. 39 at 5-6. They argue that to the extent the Motion seeks to certify "Fevid Drivers performing driving services from 2021 to present" the request is nonsensical because the Motion defines "Fevid Drivers" as the named Plaintiffs only. Id. at 6 (citing Mot. at 1-2, 9). They argue that to the extent the Motion seeks to certify "all drivers hauling sand for the Fevid Defendants during the relevant time period" the request is not sufficiently definite because it is unclear what "the relevant time period" is. Id. (internal quotation marks omitted). And to the extent that Plaintiffs seek to use the proposed Rule 23 class definition from the Complaint, Defendants argue that the definition is ambiguous because "[i]t is unclear what Plaintiffs mean by 'hauled loads in New Mexico.'" Id. They argue:

>Beyond prohibiting Defendants from knowing who would be included in the notice class, it may also prove impossible for Defendants to identify current or former employee drivers that fall within the class definition. Although Defendants track the starting points and ending points for compensable certain trips taken by drivers, they do not maintain records identifying the state in which each driver was located during each moment of each trip. Thus, it may be impossible for Defendants to comply with identifying members of such an ambiguous class.

Id. at 7. They also argue that the Complaint's Rule 23 class definition "is an objectionable 'fail safe' class definition" because determining membership turns on the merits of each individual members' claims. Id. (citing Stallbaumer v. NextEra Energy Res., LLC, Case No.: 22-cv-04031-HLT-ADM, 2023 WL 3496245, at *10 (D. Kan. May 17, 2023)). Additionally, according to Defendants each member of this proposed class is subject to the FLSA's "Motor Carrier

7

Exemption." Id. at 8. Defendants further argue that the evidence of similarly situated individuals attached to Plaintiffs' Motion is objectionable and, in any event, fails to establish any similarly situated drivers exist. Id. at 9-13. They also argue that to establish the existence of similarly situated employees Plaintiffs must do more than cite allegations in the Complaint. Id. at 11-12. Finally, Defendants object to virtually all relief requested in the Motion's Prayer for Relief except, apparently, the request to permit collective members to execute their consent electronically via DocuSign. Id. at 13-15.

In their Reply, Plaintiffs initially argue that at the notice stage, they are only required to present "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan[,]" ECF No. 44 at 1 (quoting Thiessen, 267 F.3d at 1102), and appear to argue that such a showing may be made solely with reference to allegations contained in the complaint, id. (citing Maestas v. Day & Zimmerman, LLC,[3] Civ. No. 09–019 WJ/LFG, 2013 WL 11311781, at *4 (D.N.M. Dec. 20, 2013)). They argue that they have presented "substantial (and undeniable) allegations of a common pay policy" and "compelling documentary evidence and declaration testimony conclusively establishing that none of the FEVID Drivers, in fact, ever received overtime for their work for the Fevid Defendants despite regularly working well in excess of forty hour weeks." Id. Plaintiffs further contend that Plaintiff Hubbard's Declaration "conclusively establishe[s] . . . that the Fevid Drivers did not receive overtime for hauling sand in New Mexico." Id. at 2. They further argue that Defendants' rate sheet "confirms that drivers were paid on a graduated basis[,]" id. at 3 (citing Fevid Driver Rate Sheet, ECF No. 34-2), and "is

---

[3] The title of this case is misspelled on the heading of the Order cited—specifically, "Zimmerman" is spelled "Zimmeramn." See Maestas v. Day & Zimmerman, LLC, Civ. No. 09–019 WJ/LFG, ECF No. 161 (D.N.M. Dec. 20, 2013). In an attempt to curb the proliferation of the misspelling, the Court uses the correct spelling in this Order.

8

indicative of how Fevid Drivers were paid generally[,]" id. (citing generally Hubbard Decl., ECF No. 34-1). Plaintiffs further argue that Defendants' Motor Vehicle Carrier Act defense is a merits defense that the Court should not consider at the conditional certification stage. Id. at 4-5. They further assert—for the first time—that the definition they propose in the Complaint for Rule 23 class certification is the definition they seek to conditionally certify as a collective action under 29 U.S.C. § 216(b), and that the definition is appropriate and is not a "fail safe." Id. at 5. They further argue that "[c]onsistent with increasingly common practice nationwide, Plaintiffs did not include a proposed notice in their motion to enable the parties to confer in the likely event that the Court grants Plaintiffs' motion." Id. (citations omitted). Finally, they argue that email and electronic notice is appropriate in a case like this because "putative class members are drivers and their careers necessarily take them away from home for extended periods of time." Id. at 6 (citing Landry, 252 F. Supp. 3d at 1128-31).

As indicated above, Plaintiffs' Reply brief, id. at 5, clarifies that Plaintiffs are seeking conditional certification of the following collective:

> All of Defendants' current and former truck drivers who hauled loads in New Mexico, worked over forty (40) hours in at least one week within the three (3) years preceding the filing of this lawsuit, and were not paid one and one-half times their regular rate of pay for all hours worked in excess of forty (40) hours.

Compl. ¶¶ 9, 40, ECF No. 1. Defendants argue that this definition constitutes an impermissible "fail safe" class. Resp. at 7-8, ECF No. 39.

> "A class definition creates a fail-safe class when the class definition bases membership in the class on the validity of the plaintiff's claims." Simmons v. Isle of Capri Black Hawk LLC, 2021 WL 5513744, at *6 n.3 (D. Colo. Feb. 23, 2021) (quoting Erin L. Geller, The Fail-Safe Class as an Independent Bar to Class Certification, 81 Fordham L. Rev. 2769, 2782 (2013)); see also Stallbaumer v. NextEra Energy Resources, LLC, 2023 WL 3496245, at *10 (D. Kan. May 17, 2023) ("A fail-safe class is one in which determining membership turns on the merits of the individual class members' claims.") (internal citations omitted). Fail

9

> safe classes are potentially problematic for two reasons. "First, if the only members of fail-safe classes are those who have viable claims on the merits, then class members either win or, by virtue of losing, are defined out of the class, escaping the bars of res judicata and collateral estoppel." Stallbaumer, 2023 WL 3496245, at *10 (quoting In re White, 64 F.4th 302, 313 (D.C. Cir. 2023)). Second, a fail-safe class definition makes it "difficult—if not impossible—to determine class membership early on in the case" because the court must "conduct an individual inquiry regarding the merits of each proposed plaintiff's claim ...." Stallbaumer, 2023 WL 3496245, at *10 (quoting Mike v. Safeco Ins. Co. of Am., 223 F.R.D. 50, 53 (D. Conn. 2004)). "Not only does this complicate identifying and certifying a class, but it creates significant issues in even managing the case as a class action." Stallbaumer, 2023 WL 3496245, at *10; see also Orduno v. Pietrzak, 932 F.3d 710, 716–17 (8th Cir. 2019) ("A fail-safe class is also unmanageable ... because the court cannot know to whom notice should be sent.").

Gamboa v. KISS Nutraceuticals, __ F. Supp. 3d __, 2025 WL 1088066, at *5 (D. Colo. 2025). Thus, "a 'fail-safe' class is one that includes only those who are entitled to relief." Young v. Nationwide Mut. Ins. Co., 693 F.3d 532, 538 (6th Cir. 2012).

The Court finds that the proposed definition does not create an impermissible fail-safe collective. Defendants do not dispute that they failed to pay Plaintiffs and other drivers overtime wages; rather, they argue that Plaintiffs and other drivers are exempt from the FLSA's overtime wage provision under the Motor Carrier Exemption. See Resp. at 8, ECF No. 39. As such, the Court can determine whether an individual is a member of the collective without determining whether Defendants are liable to them for unpaid overtime wages—a truck driver who worked over 40 hours in a week and was not paid overtime is in the class even if he or she is exempt from the FLSA's overtime wage provision and, therefore, not entitled to relief. Consequently, the proposed collective does not create an impermissible fail safe. See Perry v. Krieger Beard Servs., LLC, Case No. 3:17-cv-161, 2018 WL 3218413, at *3 (S.D. Ohio July 2, 2018); Cummins v. Ascellon Corp., Civil Action No. DKC 19-2953, 2020 WL 6544822, at *7-8 (D. Md. Nov. 6, 2020); see also Gamboa, 2025 WL 1088066, at *5-6.

10

Defendants also argue that the proposed definition is ambiguous because "[i]t is unclear what Plaintiffs mean by 'hauled loads in New Mexico[,]'" Resp. at 6, ECF No. 39 (quoting Compl. ¶¶ 9, 40, ECF No. 1), and assert that the ambiguity may prevent Defendants from identifying drivers that fall within the definition because although they "track the starting points and ending points for compensable certain trips taken by drivers, they do not maintain records identifying the state in which each driver was located during each moment of each trip[,]" id. at 7. However, the Court finds that these concerns can be remedied through a modification of the proposed collective definition to include only drivers whose starting points and/or ending points for compensable trips were in New Mexico. See Section IV, infra.

Defendants further argue that Plaintiffs have failed to support the Complaint's allegations of similarly situated employees with competent evidence. Resp. at 9-13, ECF No. 39. To begin with, Plaintiffs' burden at the conditional certification stage "requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." Thiessen, 267 F.3d at 1102 (internal quotation marks and citation omitted). Some courts find that a plaintiff can sustain this burden solely through allegations in the complaint. See, e.g., Maestas, 2013 WL 11311781, at *4 (finding that the amended complaint alone satisfied the "substantial allegations" requirement for conditional certification of a collective action); Hose v. Henry Indus., Inc., 49 F. Supp. 3d 906, 908-09 (D. Kan. 2014) (rejecting the defendant's argument that "substantial allegations" of similarly situated individuals must be supported by record evidence); see also Deakin, 328 F.R.D. at 432 (stating that "[t]he court must determine whether the named and potential plaintiffs are 'similarly situated' based on the allegations in the complaint, which may be supported by sworn statements" (emphasis added)).

11

Courts requiring proof in support of the complaint's allegations do not require a high level of proof. See Landry, 252 F. Supp. 3d at 1114-16.

Here, the Complaint alleges that "Plaintiffs and the other truck drivers regularly worked over forty (40) hours in each workweek. Specifically, Plaintiffs and the other truck drivers were typically scheduled for 12 to 14 hour shifts." Compl. ¶ 5, ECF No. 1. "Typically, truck drivers would work on a '5-2-5-3' shift schedule, which means they would work five days, have two days off, work five days, and then have three days off before the schedule repeats." Id. "Plaintiffs and the Class Members were subjected to the same or similar illegal pay practices for similar work." Id. ¶ 31. Specifically, "Defendants agreed to pay truck drivers partially fixed and partially variable rates based on the number of loads delivered. Defendants have a policy of paying overtime to truck drivers while in training but not while they are actually working as truck drivers." Id. ¶ 32. "Defendants classified the Class Members as exempt and paid them the same rate of pay regardless of the number of hours that they worked in each workweek and failed to compensate them at one and one-half times their regular hourly rate of pay for all hours worked in excess of forty hours." Id. ¶ 35; see also id. ¶ 44 ("Plaintiffs and all the Class Members were all improperly classified as exempt and not afforded the overtime compensation when they worked in excess of 40 hours per week."). "Pursuant to Defendants' policy, Plaintiffs and the Class Members were not compensated for time worked, including shop time, breakdown time, wait time, or any non-driving time. Plaintiffs and the Class Members were also not compensated for deadhead trips between locations." Id. ¶ 37.

In support of these allegations, Plaintiffs provide the Declaration of Plaintiff Marcus Hubbard, who states that he was employed by Defendants from March 2021 through June 2023. ECF No. 34-1 at 1. He states that although he and other "Fevid Drivers" routinely averaged more

12

than sixty or seventy hours per week hauling for Defendants, neither he nor any other Fevid Driver received overtime compensation for hauling sand. Id. Instead, they were compensated pursuant to a rate sheet which Plaintiffs attach as an exhibit to their Motion. Id. (citing ECF No. 34-2). Mr. Hubbard also provided a paystub which, according to him, reflects how he and other Fevid Drivers were paid—specifically, "by load and with no overtime." Id. (citing ECF No. 35-3). Mr. Hubbard declares that his statements are "within [his] personal knowledge[.]" Id. Plaintiffs also attach to their Motion paystubs from Plaintiffs Kirkpatrick, ECF No. 34-4, and Dees, ECF No. 35-5, which reflect that those Plaintiffs were paid in a similar manner to Plaintiff Hubbard.

       The Court finds that Plaintiffs have satisfied their lenient burden of establishing a colorable basis that the putative collective members are victims of a single decision, policy or plan. Plaintiffs and the prospective collective members worked as truck drivers hauling sand for the same employers, regularly worked more than forty hours per week, and were never paid one and one-half times their regular rate of pay for all hours worked in excess of forty hours because they were improperly classified as exempt employees. The Complaint's allegations, together with the exhibits attached to the Motion, are a sufficient basis for the Court to grant conditional certification. See Calvillo v. Bull Rogers, Inc., 267 F. Supp. 3d 1307, 1313-14 (D.N.M. 2017) (rejecting the defendants' arguments that the court should deny conditional certification because the plaintiffs' assertions regarding the defendants' pay practices as they relate to other employees were conclusory and not based on personal knowledge, and finding that the plaintiffs satisfied their "light or lenient" burden at the conditional certification stage through the amended complaint and declarations from the named plaintiff and a fellow employee); Kerr v. K. Allred Oilfield Servs., LLC, No. 2:20-CV-00477-WJ-SMV, 2020 WL 6799017, at *4 (D.N.M. Nov. 19, 2020) (finding that the amended complaint and a single supporting declaration satisfied the lenient burden at the

conditional certification stage "because they contain substantial allegations that Plaintiff, and individuals who share similar job duties, were subject to the same illegal wage policy"); Renfro v. Spartan Comput. Servs., Inc., 243 F.R.D. 431, 434 (D. Kan. 2007) ("Given the allegations of the complaint and supporting declarations, which suggest that plaintiffs maintained similar employment positions and did not receive overtime, plaintiffs have satisfied the low threshold required to demonstrate at the notice stage that all putative class members are similarly situated for purposes of conditional collective action certification under Section 216(b) of the FLSA.").

The Court further finds that notice by U.S. mail and email is appropriate in this case, given that the prospective collective members are truck drivers who may be away from their homes for extended periods of time; and, in any event, communication through email is increasingly common in today's society. See Landry, 252 F. Supp. 3d at 1129 (finding that notice by email and text message was proper for oilfield laborers because it would "increase the chance of the class members receiving and reading the notice, especially because class members likely are dispersed to various wellsites around the country and may be away from their homes and addresses of record for weeks or months at a time[,]" and observing that "courts increasingly have authorized notice by email in FLSA cases" due to "its efficacy and common usage" (internal quotation marks omitted)) (citing Butler v. DirectSAT USA, LLC, 876 F. Supp. 2d 560, 575 (D. Md. 2012) (observing that "'communication through email is now the norm'") (brackets omitted) (quoting In re Deloitte & Touche, LLP Overtime Litig., No. 11 Civ. 2461(RMB)(THK), 2012 WL 340114, at *2 (S.D.N.Y. Jan. 17, 2012))); Pogue v. Chisolm Energy Operating, LLC, No. 2:20-cv-00580-KWR-KK, 2021 WL 5861184, at *9 (D.N.M. Dec. 10, 2021) (permitting notice by mail, email, and text message and observing that "[c]ourts have recognized that notice by email and text is

reasonable in today's mobile society and that these methods of communication may offer a more reliable means of reaching an individual") (quoting Calvillo, 267 F. Supp. 3d at 1315).

For similar reasons, the Court will also permit collective members to execute their consent electronically via DocuSign. See Landry, 252 F. Supp. 3d at 1130 (collecting cases). Indeed, Defendants do not object to this request. See generally Resp., ECF No. 39.

Finally, in furtherance of the remedial purpose of the FLSA, the Court will permit Plaintiffs' counsel (or collective administrator) to distribute one follow-up "reminder" notice to those prospective collective members who have not submitted a consent form within thirty days of delivery of the original notice. See Landry, 252 F. Supp. 3d at 1130 (permitting a reminder notice thirty days after the original notice because "a reminder will serve the FLSA's remedial purpose in this case, especially in light of the potential Plaintiffs' remote locations at well sites around the country"); Culver v. Saint Francis Health Sys., Inc., Case No. 24-CV-0078-CVE-MTS, 2024 WL 3540439, at *5 (N.D. Okla. July 25, 2024) ("With the ubiquitous use of electronic devices today, along with the sheer amount of spam information received via email and text message, a reminder notice ensures that putative members have the opportunity to receive notice of the collective action."); Pogue, 2021 WL 5861184, at *9.

As to the contents of the notice, the Court will afford the Parties an opportunity to confer and work together in a good faith attempt to draft notice and consent forms that are acceptable to all Parties, in light of the Court's rulings herein. See Dahl v. Petroplex Acidizing, Inc., Civ. No. 22-252 GJF/DLM, 2024 WL 22087, at *14 (D.N.M. Jan. 2, 2024); Pogue, 2021 WL 5861184, at *10. The proposed notice shall reflect the modification to the collective definition described in this Order. See Section IV, infra.

## IV. Conclusion

Accordingly, it is **HEREBY ORDERED** that:

1. Plaintiff's Motion for Conditional Class [sic] Certification, ECF No. 34, is **GRANTED** consistent with this Order;

2. The Court **CONDITIONALLY CERTIFIES** the following collective:

   All of Defendants' current and former truck drivers who hauled loads that began and/or ended in New Mexico, worked over forty (40) hours in at least one week within the three (3) years preceding the filing of this lawsuit, and were not paid one and one-half times their regular rate of pay for all hours worked in excess of forty (40) hours.

3. The Court reserves ruling on the form and content of the notice and consent forms;

4. Within fourteen days of the date of this Order, after conferring, the Parties shall jointly submit stipulated notice and consent forms, or, if they cannot agree, they shall file their competing notice and consent forms for the Court's consideration; and

5. Once the Court approves the notice and consent forms the Court will Order Defendants to provide contact information for prospective collective members.

_____
**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE