## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

CHESTER DEES,
MARCUS HUBBARD,
WANDA KIRKPATRICK,
 and JIMMY SANTANA,

     Plaintiffs,

v.

                                 Case No. 1:24-cv-00873-MIS-KK

FEVID TRANSPORT, LLC,
and SAND REVOLUTION II, LLC,

     Defendants.

### ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR LEAVE TO AMEND COMPLAINT, DENYING DEFENDANTS' MOTION TO STRIKE UNDISCLOSED EVIDENCE, AND DENYING IN PART AND DENYING WITHOUT PREJUDICE IN PART PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

THIS MATTER is before the Court on Plaintiffs' Motion for Leave to File Amended Complaint, ECF No. 75, filed September 15, 2026.  Defendants filed a Response on September 29, 2025, ECF No. 78, to which Plaintiffs filed a Reply on October 13, 2025, ECF No. 84.

Also before the Court is Plaintiffs' Motion for Class Certification, ECF No. 69, filed September 2, 2025.  Defendants filed a Response and Incorporated Motion to Strike Undisclosed Evidence on September 30, 2026, [1] ECF No. 79, to which Plaintiffs filed a Reply on October 14, 2026,[2] ECF No. 85.

The Court held a hearing on the Motions on January 26, 2026.  See Clerk's Mins. for Jan. 26, 2026 Hr'g, ECF No. 100.

---

[1]     Defendants also filed an Unopposed Motion for Leave to Exceed Page Limits for their Response to Plaintiffs' Motion for Class Certification. ECF No. 80.  That Motion is **GRANTED**.

[2]     Plaintiffs also filed an Unopposed Motion to Exceed Page Limit for their Reply in support of their Motion for Class Certification.  ECF No. 86.  That Motion is **GRANTED**.

Upon review of the Parties' submissions, the record, and the relevant law, the Court will **GRANT IN PART AND DENY IN PART** Plaintiffs' Motion for Leave to Amend, **DENY** Defendants' Motion to Strike Undisclosed Evidence, and **DENY IN PART AND DENY WITHOUT PREJUDICE IN PART** Plaintiffs' Motion for Class Certification.

In the interests of streamlining this case, the Court writes only for the Parties and assumes the reader's familiarity with the facts giving rise to this case, the procedural history, and the arguments for and against the requested relief. The Court will limit its analysis to the findings and conclusions necessary to resolve the Motions.

## I.    Background

This is an action to recover unpaid overtime wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207, and the New Mexico Minimum Wage Act ("NMMWA"), N.M. Stat. Ann. § 50-4-22(D). Defendants formerly employed Plaintiffs as truck drivers to haul loads of sand. It appears undisputed that Defendants classified Plaintiffs and other truck drivers as exempt from the overtime wage provisions of the FLSA and NMMWA, paid them the same rate of pay regardless of the number of hours that they worked in each workweek, and failed to compensate them at one and one-half times their regular hourly rate of pay for all hours worked in excess of forty hours. Defendants also failed to pay Plaintiffs and other truck drivers for shop time, breakdown time, wait time, "deadhead trips between locations[,]" mandatory meetings, or any non-driving time.

On August 30, 2024, Plaintiffs filed this lawsuit against Defendants as a class action under the NMMWA, and as a class action and collective action under the FLSA. ECF No. 1. There are four named Plaintiffs: Chester Dees, Marcus Hubbard, Wanda June Kirkpatrick, and Jimmy Santana.

On January 15, 2025, United States Magistrate Judge Kirtan Khalsa issued an Order Commencing Phased Discovery and Setting Case Management Deadlines. ECF No. 21. Phase One of discovery was "limited to matters relevant to the certification of a collective action under the [FLSA] and class certification under Federal Rule of Civil Procedure 23." Id. at 1. Phase One discovery terminated July 16, 2025. Id. Phase Two of discovery "will address the merits of the parties' claims and defenses." Id. The initial scheduling order does not establish a deadline to add parties or amend pleadings.

On March 25, 2025, Defendants filed an Answer and affirmative defenses. ECF No. 33. Among the affirmative defenses is that "Plaintiffs' claims for overtime pay are barred because they were exempt from the FLSA's overtime provisions pursuant to the Motor Carrier Act [MCA] exemption of 29 U.S.C § 213(b)(1)." Id. at 8. They also assert affirmative defenses challenging this case as a class action. Id. at 9-10.

On April 3, 2025, Plaintiffs filed a Motion for Conditional Class [sic] Certification pursuant to 29 U.S.C. § 216(b), which actually seeks conditional certification as a collective action under the FLSA. ECF No. 34. On May 21, 2025, the Court issued an Order granting the Motion in part, conditionally certifying the following collective:

> All of Defendants' current and former truck drivers who hauled loads that began and/or ended in New Mexico, worked over forty (40) hours in at least one week within the three (3) years preceding the filing of this lawsuit, and were not paid one and one-half times their regular rate of pay for all hours worked in excess of forty (40) hours.

ECF No. 45. The Court subsequently authorized notice to potential opt-in plaintiffs. ECF No. 48. Over one hundred plaintiffs have opted in to the collective.

On September 2, 2025, Plaintiffs filed a Motion for Class Certification. ECF No. 69. Defendants filed a Response, ECF No. 79, to which Plaintiffs filed a Reply, ECF No. 85.

3

On September 15, 2025, Plaintiffs filed a Motion for Leave to Amend their Complaint, ECF No. 75, to which they attached a proposed Amended Complaint. After Defendants filed a Response, ECF No. 78, Plaintiffs filed a Reply, ECF No. 84, to which they attached a <u>new</u> proposed Amended Complaint, ECF No. 84-1. Unlike the proposed Amended Complaint they attached to their Motion, the new proposed Amended Complaint contains a claim for quantum meruit; because this claim was not included in the original proposed Amended Complaint, Defendants' Response does not address it.

The Court held a hearing on the Motions on January 26, 2026. <u>See</u> Clerk's Mins. for Jan. 26, 2026 Hr'g, ECF No. 100.

## II.     Discussion

Initially, the Court observes that the Motion for Class Certification seeks class certification of the FLSA wage claims, the NMMWA wage claims, and the quantum meruit claim.[3] <u>See</u> ECF No. 69 at 1. However, the operative Complaint does not contain a quantum meruit claim—that claim first appears in the proposed Amended Complaint which the Court has not yet granted leave to file. Plaintiffs filed their Motion for Class Certification thirteen days before they file their Motion for Leave to Amend, and the quantum meruit claim doesn't appear until the version of the proposed Amended Complaint attached to their Reply brief, ECF No. 84-1.

The Court finds that Plaintiffs cannot seek class certification on a claim that does not appear in the operative complaint. Thus, as explained more fully below, the Court will grant Plaintiffs leave to amend their Complaint to, <u>inter alia</u>, add a quantum meruit claim. Additionally, Defendants should have the opportunity to conduct discovery regarding Plaintiffs' newly-named

---

[3]     Plaintiffs do not seek class certification of the FLSA and NMMWA retaliation claims asserted for the first time in their proposed Amended Complaint. <u>See</u> ECF No. 85 at 11.

class representative, Stephen Coronado, before they are required to respond to the Motion for Class Certification.

Therefore, the Court will deny the Motion for Class Certification without prejudice to filing a renewed Motion for Class Certification after they file their amended complaint with the quantum meruit claim, and after Defendants conduct Phase I discovery of Mr. Coronado.[4]

### a.     Motion for Leave to Amend

Plaintiffs seek leave to file an Amended Complaint to: (1) add each of the opt-in plaintiffs as named plaintiffs, with each named plaintiff now asserting both FLSA and NMMWA claims (and apparently to act as potential class representatives, although Plaintiffs deny that this was intended), see Proposed Amended Complaint, ECF No. 84-1 ¶¶ 7-139, 142; and (2) add new claims for (a) "gap time" pay under the FLSA, id. ¶¶ 200-01, (b) retaliation under the FLSA and NMMWA, id. ¶¶ 202-08, and (3) quantum meruit, id. ¶¶ 209-10.

### 1.     Adding all of the opt-in plaintiffs as named Plaintiffs

The Court denies Plaintiffs' Motion to Amend to the extent it seeks to add each of the opt-in plaintiffs as named plaintiffs, but will equitably toll the statute of limitations on their claims.  In this regard, the Court agrees with the court's analysis in Gomez v. Global Precision Systems, LLC, 636 F. Supp. 3d 746, 752-62 (W.D. Tex. 2022).  Briefly, the Court finds that the FLSA's collective action procedures operate as a special joinder mechanism apart from Rule 15 (Amended Pleadings) and Rule 20 (Joinder of Parties).

> Sometimes, special rules for adding (or joining) plaintiffs apply. At some point, too many individual plaintiffs, each having to separately litigate their claims, creates a hectic if not unworkable scenario for all involved in the litigation. Compare Acevedo, 600 F.3d at 522 (affirming district court's decision to deny Rule 20 joinder of 800 plaintiffs when trying the claims together "would be too challenging

---

[4]     The Court will endeavor to expedite ruling on the renewed motion for class certification.

logistically"), with Allen v. Atl. Richfield Co., 724 F.2d 1131, 1135 (5th Cir. 1984) (allowing 22 people to join FLSA suit as named plaintiffs, but emphasizing that the case never became a collective action because no unnamed plaintiff ever opted in to the suit); see also Scott A. Moss & Nantiya Ruan, The Second-Class Action: How Courts Thwart Wage Rights by Misapplying Class Action Rules, 61 Am. U. L. Rev. 523, 526–27 (2012) ("[J]oinder becomes infeasible with too many plaintiffs."). Congress recognized this potential inefficiency and thus prescribed collective actions, which, like class actions, provide a mechanism for challenging conduct that allegedly affects many people.

Gomez, 636 F. Supp. 3d at 752-53. The court found that "[a]llowing Plaintiffs to add nearly 150 named plaintiffs (who are themselves potential opt-in plaintiffs), whether under Rule 15(a)(2), or under Rule 20, would bypass the collective action joinder mechanism." Id. at 753-54. "And adding nearly 150 people as new named plaintiffs could throw the case's status as a potential collective action into question." Id. at 754. The court then went on to analyze why adding 150 new named plaintiffs would be contrary to the collective action mechanism, as a matter of practicability and efficiency. Id. at 754-55.

The Court adopts the Gomez analysis and finds that adding all opt-in plaintiffs would be inefficient, impracticable, and contrary to the collective action mechanism established by Congress.[5] See also White v. Dolgencorp, LLC, Case No. 3:23-cv-01169, 2024 WL 5188738, at

---

[5] The Court acknowledges that the procedure for collective action certification is different in the Fifth Circuit. Under the ad hoc approach endorsed—but not mandated—by the Tenth Circuit, "a court typically makes an initial 'notice stage' determination of whether plaintiffs are 'similarly situated.'" Thiessen v. Gen. Elec. Cap. Corp., 267 F.3d 1095, 1102 (10th Cir. 2001) (citation omitted). A court's initial determination "decides whether a collective action should be certified for purposes of notifying potential class members." Bustillos v. Bd. of Cnty. Comm'rs of Hidalgo Cnty., 310 F.R.D. 631, 662-63 (D.N.M. 2015).

While the plaintiff bears the burden of proving she is "similarly situated" to other potential collective members, the burden is "not great." Id. at 663. The plaintiff "'need only describe the potential class within reasonable limits and provide some factual basis from which the court can determine if similarly situated potential plaintiffs exist.'" Id. (quoting Schwed v. Gen. Elec. Co., 159 F.R.D. 373, 375-76 (N.D.N.Y. 1995)). At this stage, a court "'requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan.'" Thiessen, 267 F.3d at 1102 (alteration omitted) (quoting Bayles v. Am. Med. Response of Colo., Inc., 950 F. Supp. 1053, 1066 (D. Colo. 1996), modified on recon., 962 F. Supp. 1346 (D. Colo. 1997)). "The court must determine whether the named and potential plaintiffs are 'similarly situated' based on the allegations in the complaint, which may be supported by sworn statements." Deakin, 328 F.R.D. at 432; see also Landry v. Swire Oilfield Servs, L.L.C., 252 F. Supp. 3d 1079, 1114 (D.N.M. 2017) (stating that a plaintiff "need only describe the potential class within reasonable limits and provide some factual basis from which the court can determine

*9 (M.D. Tenn. Dec. 20, 2024) (finding "that joining seventy-five plaintiffs in one action would make this case unmanageable, would not promote the possibility of settlement, and would not further the interest of judicial economy, as each plaintiff will require different witnesses and different proof for their separate claims" and that "[i]t would be monstrously confusing for the parties and the court [or jury] to keep the facts relating to each of the seventy-five plaintiffs separate, which gives rise to a strong likelihood of prejudice to both parties if all seventy-five claims were tried together"), vacated in part on other grounds 2026 WL 147835 (M.D. Tenn. Jan. 20, 2026).

The Court further adopts Gomez's second analysis and finds that equitable tolling is appropriate under these circumstances. See id. at 759-62. Cf. Blanton v. United Healthcare Servs., Inc., No. 24-cv-484-SMD-JMR, 2025 WL 2636381, at *5 (D.N.M. Sept. 12, 2025) ("Courts in this District have applied equitable tolling to FLSA deadlines.") (citation omitted). Consequently, the Court tolls the statute of limitations for the opt-in Plaintiffs' FLSA claims from the date they filed

---

if similarly situated potential plaintiffs exist."). If the plaintiff carries her burden, the Court may conditionally certify a collective action and facilitate notice to the potential opt-in plaintiffs that this action is pending. See Hoffman-LaRoche, 493 U.S. at 172-73.

Then, after this notice and the close of discovery, a court moves to the second stage of its analysis, "using a stricter standard of 'similarly situated.'" Thiessen, 267 F.3d at 1102-03. The court may then reevaluate the conditional certification, usually prompted by a defendant's motion to decertify the collective. Id. During the second stage of analysis, "a court reviews several factors, including (1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; (3) fairness and procedural considerations; and (4) whether plaintiffs made the filings required" before they commenced their lawsuit. Id. (internal quotation marks and citations omitted); see also Deakin, 328 F.R.D. at 432.

In Swales v. KLLM Transport Services, L.L.C., 985 F.3d 430 (5th Cir. 2021), the Fifth Circuit did away with the conditional certification stage, holding that district courts must permit a period of limited discovery at the outset of the case and determine whether the potential opt-in plaintiffs are, in fact, similarly situated to the named plaintiffs before certifying the case as a collective action.

In Gomez, the court based its findings in part on the Swales framework. 636 F. Supp. 3d at 754. However, the Court finds that Gomez's analysis regarding inefficiency and impracticability of joinder of 150 opt-in plaintiffs applies equally to the framework utilized by this Court.

their consent forms until the date the Court ultimately decides whether to grant final certification of a collective action in this case.[6]

### 2.    FLSA gap time claim

Plaintiffs seek to amend the Complaint to add an FLSA gap time claim.  In their Reply in support of their Motion for Class Certification, Plaintiffs clarify that they wish to assert a "pure" gap time claim (as opposed to an "overtime gap time" claim).

For context, the FLSA provides causes of action for only (1) minimum wage violations, 29 U.S.C. § 206, and (2) overtime wage violations, 29 U.S.C. § 207.

> There are situations, however, that fall between these two provisions of the FLSA. "In addition to seeking unpaid overtime compensation, employees may seek to recover wages for uncompensated hours worked that 'fall between the minimum wage and the overtime provisions of the FLSA,' otherwise known as 'gap time.'" Davis v. Abington Mem'l Hosp., 765 F.3d 236, 243 (3rd Cir. 2014) (quoting Adair v. City of Kirkland, 185 F.3d 1055, 1062 (9th Cir. 1999)). Gap time "refers to time that is not [directly] covered by the [FLSA's] overtime provisions because it does not exceed the overtime limit, and to time that is not covered by the [FLSA's] minimum wage provisions because ... the employees are still being paid a minimum wage when their salaries are averaged across their actual time worked." Id. at 243-44 (quoting Adair, 185 F.3d at 1062 n.6).
>
> There are two types of gap time—pure gap time and overtime gap time. In pure gap time claims, the employee seeks to recover for unpaid straight time in a week in which they worked no overtime. In overtime gap time claims, the employee seeks to recover unpaid straight time for a week in which they did work overtime. See Monahan, 95 F.3d at 1266.
>
> While direct minimum wage and overtime violations can clearly be addressed by the FLSA, 29 U.S.C. §§ 206–207, no provision of the FLSA explicitly governs employee claims to recover for unpaid gap time.

Conner v. Cleveland County, 22 F.4th 412, 421 (4th Cir. 2022).

---

[6]    Alternatively, even if Rule 15 and/or Rule 20 applied here the Court would still exercise its discretion to deny the Motion due to the prejudice that would result from the joinder of more than 100 new named plaintiffs.  Additionally, to the extent Rule 20 applies, the Motion is denied for Plaintiffs' failure to argue, much less establish, that the requirements for permissive joinder are satisfied here.

It appears that no court has found pure gap time claims cognizable under the FLSA. See id. ("To be sure, courts may be united in rejecting pure gap time claims under the FLSA . . . ."). However, some courts find that these claims are compensable under a quantum meruit or unjust enrichment theory. See Linde v. Envision Healthcare Corp., Case No. 2:20-cv-02661-HLT-TJJ, 2021 WL 3089214 (D. Kan July 22, 2021); Tommey v. Comput. Scis. Corp., No. 11–cv–02214–EFM–GLR, 2013 WL 1000659 (D. Kan. Mar. 13, 2013).

Because courts appear to agree unanimously that a pure gap time claim is not cognizable under the FLSA, the Court denies leave to add such a claim.

### 3.    Retaliation

Plaintiffs move to amend the Complaint to add a retaliation claim asserting that after filing their claims in this case, "Defendants retaliated against those Plaintiffs still employed by Fevid by changing their compensation system and taking adverse employment action against them, violating both the FLSA and the NMMWA." ECF No. 84-1 ¶ 203; see also id. ¶¶ 204-08.

Defendants initially argue that the claim fails because it does not identify which Plaintiffs are stating a claim for retaliation—it cannot be all of them because not all of them were working for Fevid when this lawsuit was filed. They argue that Rule 8 requires Plaintiffs to identify which plaintiffs believe they have actionable claims for retaliation. ECF No. 78 at 17. The Court agrees but will permit Plaintiffs to name which Plaintiffs are asserting a retaliation claim in their amended complaint. See Stewart v. CUS Nashville, LLC, No. 3:11–cv–0342, 2012 WL 4049968, at *4 (M.D. Tenn. Sep. 13, 2012) (granting motion for leave to amend to add a retaliation claim by two (specific) opt-in plaintiffs).

Defendants further argue that Plaintiffs fail to allege facts showing a causal connection between the change in payment procedures and the fact they joined this lawsuit. Id. at 17-18.

9

Defendants point out that opt-in plaintiffs have continued to join this action after the alleged retaliatory action occurred. Defendants argue that "Plaintiffs have not alleged any facts showing that Defendants retaliated against drivers for joining a lawsuit they had not yet joined, and logic would undermine such a claim." Id. at 18.

The Court grants Plaintiffs leave to amend to add a retaliation claim under the FLSA only. Opt-in plaintiffs—the only plaintiffs that can possibly assert a retaliation claim because the named plaintiffs no longer worked for Fevid when this case was filed—become party plaintiffs for purposes of the FLSA claims only,[7] not state law claims. See Reinig v. RBS Citizens, N.A., 2:15-CV-01541-CCW, 2024 WL 5443175, at *5 (W.D. Pa. Feb. 2, 2024) (holding that opt-in plaintiffs are not party plaintiffs with respect to state law claims); Cantu v. Mammoth Energy Servs., No. SA-19-CV-615-DAE, 2023 WL 3681704, at *11 (W.D. Tex. Feb. 28, 2023) ("Opt-in Plaintiffs are not parties to state law claims asserted in a hybrid action solely by virtue of filing a consent form and opting into the Section 216(b) collective action."); see also Bourdeaux v. Schlumberger Tech. Corp., CASE NO. 6:14-CV-02267, 2022 WL 992671, at *2 (W.D. La. Mar. 30, 2022); cf. Merrill v. Pathway Leasing LLC, Civil Action No. 16–cv–02242–KLM, 2018 WL 3032553, at *1-3 (D. Colo. June 11, 2018) (granting the defendants' motion to determine as a matter of law that the opt-in plaintiffs may not assert any state-law claims). Furthermore, the Motion for Class Certification does not include the retaliation claim under the NMMWA.

---

[7] It is possible that opt-in plaintiffs could become party plaintiffs to state law claims if the consent form is broad enough to include consenting to joining state law claims, but the Court finds that the consent form in this case is not that broad. See ECF No. 48-1 at 4 ("I understand that this lawsuit is brought under the Fair Labor Standards Act, and consent to be bound by the Court's decision.").

### 4.     Quantum meruit

Finally, Plaintiffs seek leave to amend to add a quantum meruit claim alleging that "Plaintiffs provided compensable and valuable services for the benefit of Defendants, who accepted those services knowing that Plaintiffs expected compensation for them[,]" ECF No. 84-1 ¶ 209, and "Defendants have been knowingly benefitted at the expense of Plaintiffs in a manner such that allowance of the other to retain the benefit would be unjust[,]" id. ¶ 210.

Courts generally permit quantum meruit claims to survive dismissal where they seek "something more than what the FLSA [could] provide—such as regular wages not paid at the contracted rate or 'gap time' wages." Charbonneau v. Mortg. Lenders of Am., L.L.C., Case No. 18-2062-CM-KGS, 2018 WL 6411447, at *2 (D. Kan. Dec. 6, 2018). Indeed, as previously indicated, see Section II(a)(2), supra, courts have found that "pure" gap time claims are compensable under a quantum meruit theory. See Linde, 2021 WL 3089214, at *3-4; Tommey, 2013 WL 1000659, at *2; Roberts v. Baptist Healthcare Sys., LLC, CIVIL ACTION NO. 1:20-CV-00092-MAC, 2022 WL 16702811, at *4 (E.D. Tex. Oct. 18, 2022); Karna v. BP Corp. N. Am., Inc., 11 F. Supp. 3d 809, 817 (S.D. Tex. 2014). Thus, to the extent Plaintiffs' proposed quantum meruit claim is pled as an alternative to the FLSA claims, or seeks something more than what the FLSA can provide (e.g., overlaps with their "pure" gap time claim), the Court grants Plaintiffs' leave to amend to add the claim.

### b.     Motion for Class Certification

Plaintiffs seek class certification for their overtime wage claims under both the NMMWA and the FLSA (but not the retaliation claims in the proposed Amended Complaint), and for the quantum meruit claim, and they appear to wish to define the class using the same definition as the conditionally-certified FLSA collective:

> All of Defendants' current and former drivers who hauled loads that began and/or ended in New Mexico, worked over forty (40) hours in at least one week within the three (3) years preceding the filing of this lawsuit, and were not paid one and one-half times their regular rates of pay for all hours worked in excess of forty (40) hours.

ECF No. 69 at 1.[8]  Based on discovery obtained from Defendants, Plaintiffs assert that there are over 400 putative class members.  Id. at 12.  Plaintiffs designate Stephen Coronado, an opt-in Plaintiff not named in the Complaint, as the class representative.  Id. at 25.  In their Response to the Motion, Defendants move to strike Mr. Coronado's Declaration.  See ECF No. 75 at 4-5.

### 1.    Defendants' Motion to Strike

In their Response, Defendants incorporate a "Motion to Strike Undisclosed Evidence." ECF No. 79 at 4.  They argue that

> Months after Phase I class discovery closed, Plaintiffs—for the first time— disclosed their intent to designate Steven Coronado as "the Class Representative." Motion at 25. They also produced a declaration from him in support of the Motion. Motion at Exhibit E. Coronado was never disclosed as a named plaintiff during discovery or identified as a witness in Plaintiffs' Initial Disclosures. . . . Nor did Plaintiffs  disclose that they intended to rely upon an undisclosed declaration of a plaintiff it had not identified as a class representative to seek Rule 23 certification.
>
> By withholding information about Coronado until after discovery closed, Plaintiffs deprived Defendants of the opportunity to depose Coronado, probe his adequacy as a representative, or test his testimony through discovery. Plaintiffs rely on Coronado's declaration as their sole plaintiff affiant in support of their Rule 23 Motion. Yet Defendants and the Court have no way to test the veracity or adequacy of that evidence. Allowing Plaintiffs to proceed in this manner would sanction a

---

[8]    Plaintiffs do not explicitly ask the Court to certify a class using this definition; rather, under the heading "**THE PROPOSED CLASS**" they note that the Court granted conditional certification of a collective action and used this definition to define the collective.  ECF No. 69 at 1.  The class definition in the proposed Amended Complaint is

> All of Defendants' current and former truck drivers who hauled loads in New Mexico, worked over forty (40) hours in at least one week within the three (3) years preceding the filing of this lawsuit, and were not paid one and one-half times their regular rate of pay for all hours worked in excess of forty (40) hours.

ECF No. 84-1 ¶ 142.  This was the original definition of the proposed FLSA collective action, which the Court modified in its Order granting conditional certification of the collective action.  See ECF No. 45 at 11.

> trial-by-ambush strategy: Defendants are left to guess what Coronado might have testified to under cross-examination or after document production.

Id. at 4-5. Defendants argue that "[p]ermitting Plaintiffs to rely on Coronado's declaration at this stage would unravel the orderly phased discovery process, prejudice Defendants, and reward Plaintiffs' failure to comply with disclosure obligations. The proper remedy is to strike Coronado's declaration, disregard his purported designation as a "Class Representative," and confine the class certification analysis to the record developed during Phase I discovery." Id. at 5-6.

Plaintiffs argue that Mr. Coronado opted-in on July 11, 2025—five days before Phase I discovery ended. They assert that after they filed their Motion for Class Certification on September 2, 2025, Defendants did not ask for an opportunity to depose Mr. Coronado. They argue that striking Mr. Coronado's declaration and/or barring him from acting as the class representative would effectively prevent this case from proceeding as a class action. They assert that Defendants are not prejudiced because Plaintiffs offered Defendants an opportunity to depose Mr. Coronado (apparently after the Phase I discovery deadline) and to present supplementary briefing based on his testimony.

The Court denies the Motion to Strike. Because the Court is granting leave to amend the Complaint, Plaintiffs may add Mr. Coronado as a class representative, and Defendants may conduct Phase I discovery of Mr. Coronado. Then, Plaintiffs may file a renewed Motion for Class Certification.

### 2. Abuse of the certification process

Defendants argue that the Motion for Class Certification should be denied for Plaintiffs' abuse of the certification process. ECF No. 79 at 30. In a nutshell, they argue that Plaintiffs knew from the beginning that they had no legitimate FLSA claim because they are exempt from the

FLSA, but used the lenient FLSA collective action certification process "to recruit more plaintiffs and fabricate the basis for a larger damage model to put more settlement pressure on Defendants, meritorious claim or not." Id.

Resolution of this argument would require the Court to determine the merits of Plaintiffs' FLSA claims, which would be inappropriate at this early stage. Thus, the Court finds that denying the Motion for Class Certification on these grounds is improper.

### 3.    FLSA claims cannot be certified as a class action

The Parties dispute whether FLSA claims may be certified as a class action. Although Plaintiff cites cases finding that FLSA cases may be certified as collective actions and class actions under Rule 23, see ECF No. 85 at 12, the Court disagrees.

> An FLSA action for overtime pay can be maintained by "one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). However, prospective plaintiffs under FLSA must expressly consent to join the class, because § 216(b) contains this provision: "No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." Id. Because of this opt-in requirement, FLSA plaintiffs may not certify a class under Rule 23. Grayson v. K Mart Corp., 79 F.3d 1086, 1106 (11th Cir.1996).

Prickett v. DeKalb Cnty., 349 F.3d 1294, 1296 (11th Cir. 2003) (emphasis added). See also King v. Gen. Elec. Co., 960 F.2d 617, 621 (7th Cir. 1992) (stating, in a case under the Age Discrimination in Employment Act, which adopts the FLSA collective action procedure, that the FLSA § 16(b) opt-in procedure preempts Rule 23's class action procedure); Lusardi v. Lechner, 855 F.2d 1062, 1068 n.8 (3d Cir. 1988) ("Courts have generally recognized that Rule 23 class actions may not be used under FLSA § 16(b)." (citing LaChapelle v. Owens-Illinois, Inc., 513 F.2d 286, 288 (5th Cir. 1975) ("fundamental, irreconcilable difference" between Rule 23 and FLSA § 16(b) class actions"))); Landry v. Swire Oilfield Servs., L.L.C., 252 F. Supp. 3d 1079, 1112-13 (D.N.M. 2017);

Roach v. Provant Health Sols., LLC, CASE NO. 8:14-cv-1663-T-23MAP, 2015 WL 12838833, at *1 (M.D. Fla. Nov. 3, 2015); Beltran-Benitez v. Sea Safari, Ltd., 180 F Supp. 2d 772, 774 (E.D.N.C. 2001); Flores v. Park W. Parking LLC, CASE NO. 06-22055-CIV-KING/GARBER, 2008 WL 11409098, at *3 (S.D. Fla. Feb. 1, 2008); Brown v. Money Tree Mortg., Inc., 222 F.R.D. 676, 679 (D. Kan. 2004).  Language from the Tenth Circuit is consistent.  See Thiessen v. Gen. Elec. Cap. Corp., 267 F.3d 1095, 1012 (10th Cir. 2001) ("Unlike class actions under Rule 23, '[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.'" (quoting 29 U.S.C. § 216(b)).

Consequently, the Court will deny the Motion for Class Certification in part and solely to the extent it seeks certification of a class action under the FLSA, and deny it without prejudice to the extent it seeks class certification of the NMMWA claims and quantum meruit claim.

## III.    Conclusion

Therefore, it is **HEREBY ORDERED** that:

1.    Plaintiffs' Motion for Leave to Amend the Complaint, ECF No. 75, is **GRANTED IN PART AND DENIED IN PART** consistent with this Order, and specifically:

(a) the Motion is **GRANTED** to the extent Plaintiffs seek leave to amend the Complaint to

(i) name Mr. Coronado as a plaintiff and class representative,

(ii) add a quantum meruit claim,

(iii) add a retaliation claim under the FLSA only, and

(iv) name an opt-in plaintiff as class representative for the FLSA retaliation claim;

**(b)** the Motion is **DENIED** to the extent Plaintiffs seek leave to amend to add

    **(i)** all of the opt-in plaintiffs as named plaintiffs, but the Court equitably tolls their FLSA claims from the date they filed their consent forms until the Court decides whether to grant final certification of a collective action in this case,

    **(ii)** a gap time claim under the FLSA, and

    **(iii)** a claim for retaliation under the NMMWA.

2.    Defendants' Motion to Strike Undisclosed Evidence, ECF No. 79, is **DENIED**;

3.    Plaintiffs' Motion for Class Certification, ECF No. 69, is **DENIED IN PART AND DENIED WITHOUT PREJUDICE IN PART** consistent with this Order, and specifically:

**(a)** the Motion is **DENIED** to the extent it seeks class certification of the FLSA claim(s);

**(b)** the Motion is **DENIED WITHOUT PREJUDICE** to the extent it seeks class certification of the NMMWA wage claims and quantum meruit claim; and

**(c)** Plaintiffs may file a renewed Motion for Class Certification after they file their amended complaint and after Defendants conduct Phase I discovery on Mr. Coronado.

_Margaret Strickland_
_____
**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE

16